JULIUS GERO, PLAINTIFF-APPELLANT, v.
GILBERT CUTLER, DEFENDANT-RESPONDENT.

Argued December 3, 1974—Decided January 29, 1975.

*Mr. George F. Hendricks, Jr.,* argued the cause for appellant (*Messrs. Pincus, Sheehan & Hendricks* and *Mr. Robert J. Lecky,* attorneys).

*Mr. Robert M. Graham* argued the cause for respondent (*Messrs. Graham, Yurasko, Golden & Lintner,* attorneys).

PER CURIAM. ■ Our grant of plaintiff's petition for certification, 66 *N. J.* 319 (1974), brings on for review his claim of error in (1) the assignment judge's denial of plaintiff's motion to permit the taking of the deposition *de bene esse* of Dr. Richard H. Rothman, a practitioner in Philadelphia, Pennsylvania, who had performed two surgical inter-

ventions on plaintiff's lower back;[1] (2) comments of defendant's attorney during trial; and (3) the inadequacy of the verdict of $20,000 damages for personal injuries from a two-vehicular accident. The Appellate Division, in an unreported opinion, affirmed the plaintiff's judgment entered upon that verdict. The point as to the inadequacy thereof was conceded by plaintiff's attorney at oral argument before us to be insubstantial, given the posture of the proof as it went to the jury as distinguished from what it would have been had Dr. Rothman's testimony been included. We therefore concern ourselves with the first ground above and comment only briefly on the second.

With defendant's liability having been established in an earlier phase of this bifurcated proceeding, the amount of damages remained the sole issue. The essential question posed for jury determination was whether the surgery performed by Dr. Rothman was in fact a necessary and proximate result of the automobile accident. Whereas up to the time of the liability trial the surgeon had indicated a willingness to come to New Jersey to testify, immediately after that phase of the case was completed but several weeks prior to the scheduled trial on damages he expressed his refusal to do so,[2] although he was agreeable to being deposed in

---

[1] A motion for leave to appeal that ruling was denied by the Appellate Division. Of course, this denial was not an adjudication on the merits of the issue raised. *State v. Hanson*, 59 *N. J. Super.* 434, 440 (App. Div.), certif. den., 32 *N. J.* 351 (1960) ; *Campbell v. Schlaifer*, 88 *N. J. Super.* 66, 68 (App. Div. 1965). See also *Romano v. Maglio*, 41 *N. J. Super.* 561, 567–68 (App. Div.), certif. den., 22 *N. J.* 574 (1956), *cert.* den., 353 *U. S.* 923, 77 S. Ct. 682, 1 *L. Ed.* 2d 720 (1957) ; Sullivan, "Interlocutory Appeals," 92 *N. J. L. J.* 161 (1969).

[2] Plaintiff's trial attorney appended to the motion his affidavit attesting to the doctor's representation to plaintiff "for the last two years that he would appear as a witness on Mr. Gero's behalf in the New Jersey courts." He also offered a letter, bearing the date upon which the motion was argued, in which the doctor explained that he could not now testify in court for plaintiff because of his "heavy teaching, research and patient care obligations and the recent illness of [his] partner, Dr. James Marvel * * *."

Philadelphia. Defense counsel having refused to travel to Philadelphia for the doctor's deposition without a court order, plaintiff brought the motion referred to above. He had already offered to schedule the proceeding at any time mutually convenient for Dr. Rothman and defendant's attorney, both of whose expenses consequent upon attendance he agreed to pay.

█ If defendant's attorney objected to the deposition for any reason, including the asserted inconvenience of the time or place, see *R.* 4:14–2, he would have done well to seek, in advance of any scheduled deposition date, judicial resolution of the issue included in his objection by bringing a motion under *R.* 4:10–3 for a protective order. Instead, he simply made plain his intransigence, with which plaintiff's attorney undertook to cope by seizing the initiative and filing the subject motion.

We may perhaps appropriately pause at this point to record our awareness that experienced trial lawyers work out among themselves, every day of the week, problems of scheduling and expenses and the like in connection with depositions, rather than consume valuable court time to resolve any differences. That informal approach is not only highly desirable, it is probably indispensable to the continued efficient functioning of our judicial system. Without that measure of cooperation from the trial bar, which in no way compromises or jeopardizes the zealous representation of clients, see *DR* 7–101(A)(1), our dockets would very soon become crowded with petty quarrels and other matters requiring an inordinate amount of time and expense. *Cf.* DR 7–102 (A)(1). Regrettably, the requisite harmonious spirit was conspicuously absent here.

█ We return to the narration of facts. Because his motion to permit the taking of Dr. Rothman's deposition was denied, plaintiff was obliged to meet his burden on the critical issue of causal necessity by the introduction of an examining expert's opinion founded in part on hypothetical questions. These in turn were propounded on the basis of hos-

pital records and Dr. Rothman's reports. Defendant countered on this issue by producing as a witness plaintiff's original treating physician who said, in essence, that the surgery was quite unnecessary. Hence the testimony of Dr. Rothman assumes paramount significance: in light of the amount awarded it is clear the jury found no proximate necessity for the surgeon's operative procedures, which consisted of a cervical disc excision with fusion and a lumbar laminectomy with spinal fusion. While it need not be presumed that the jury's conclusion would have been any different had Dr. Rothman's testimony been received, we are satisfied that it might very well have been; thus, the judicially-enforced unavailability of that testimony was in these circumstances prejudicially erroneous.

The resistance to plaintiff's application to take the deposition came not from the physician but from defense counsel. His reasons proffered at argument of the motion were evanescent, based seemingly on nothing more substantial than an antagonism towards cooperation. In any event the assignment judge did not adopt them. Rather, his denial of the motion grew out of a concern for calendar problems, generated, he felt, by Dr. Rothman's position as "the treating surgeon in several cases now pending in this County. I would say at least a dozen." It appears that Dr. Rothman had indicated a similar unwillingness to appear in this same court in other pending cases, thereby prompting several other applications like the one at hand.

Here there is no suggestion that the deposition would have delayed any scheduled trial, nor does the record disclose other inconvenience to the trial court. While defense counsel's scheduling problems may be entitled to consideration, we do not view whatever disruption thereof would be encountered by a trip to Philadelphia as a sufficient basis for denying plaintiff the benefit of his physician's testimony, at least where, as here, there is the assurance of arrangements to accommodate counsel's other obligations, with his expenses paid. While the court's ruling appears to have been

calculated to punish the doctor in some way (perhaps by discouraging patients from seeking his services), it had the unfortunate effect of working an injustice upon this innocent plaintiff. For that reason there must be a new trial, with reasonable opportunity in advance thereof to complete Dr. Rothman's deposition if he remains unavailable to testify in court.

In light of the decision we have reached, it becomes unnecessary to determine whether defendant's attorney's remarks during trial rise to the level of plain error. Suffice it to say that we look upon many of the comments as inappropriate and some of them as grossly so. We expect no repetition of this conduct at the retrial.

Reversed and remanded.

*For reversal and remandment*—Chief Justice HUGHES and Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—6.

*For affirmance*—None.